UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Calvin Esters,                                              Civil No. 09-1667 MJD/AJB

                Petitioner,

v.                                                          **REPORT AND RECOMMENDATION**

B.R. Jett,
Warden, FMC–Rochester,

                Respondent.

This matter is before the Court, Magistrate Judge Arthur J. Boylan, on petition pursuant to 28 U.S.C. § 2241 for habeas corpus relief by a federal prisoner. The action has been referred to the magistrate judge for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1. Petitioner Calvin Esters is confined at the Federal Medical Center ("FMC") at Rochester, Minnesota, pursuant to conviction and sentencing in United States District Court, Southern District of Illinois, on drug distribution charges. Mr. Esters was initially sentenced in January 2001, to a term of 168 months, to be followed by five years supervised release. The sentence was subsequently reduced to 135 months, with five years supervised release. His current projected release date, with credit for good time, is May 8, 2010.[1]

        Petitioner's claim in this action is that respondent has improperly applied the Second Chance Act of 2007 ("SCA"), Public Law 110-199, in making its pre-release recommendation. Mr. Esters has been advised that he would be eligible for 150 to 180 days Residential Reentry Center ("RRC") placement immediately prior to his projected release date. Indeed, he has already been referred for a transfer to occur on November 18, 2009, to a halfway

---

[1] Decl. of Anne Kinyon, ¶ 2, Attach. A.

house in St. Louis, Missouri.[2]  He now argues that the respondent has erred in failing to grant him the full 12 months of community or home confinement time allowed under the SCA, and he seeks "placement of 9 to 12 months."[3]  Mr. Esters asserts that the SCA and Bureau of Prisons ("BOP") regulations authorize pre-release programming for the final 12 months of a inmate's sentence and that BOP staff have been improperly denied discretion to recommend RRC placements greater than 6 months duration as the result of a BOP interim memorandum issued on April 14, 2008.  Petitioner generally alleges that he is being denied pre-release placement for a time that would permit the greatest likelihood of successful family and community reintegration as authorized under the SCA.  He specifically contends that he was not permitted to participate in a BOP 500-hour residential drug treatment program, and additional time (beyond 180 days) would allow him an opportunity to participate in drug rehab and is necessary because he has no home to go to after RRC placement.[4]  Esters acknowledges that he has not exhausted available administrative remedies and argues that he should be excused from the exhaustion requirement so that he can receive the entire 12 months halfway house placement[5] that he now requests.  For the reasons discussed below, it is recommended that the petition [Docket No. 1] be dismissed

---

[2]  Decl. of Anne Kinyon, ¶ 3, Attach. B.

[3]  Pet., ¶ 16, page 7.

[4]  Mem. in Support of Pet'r, page 6.

[5]  Id. at 12-13.  In his petition in this district court action, Mr. Esters expressly indicates that he is seeking a 9 to 12 month RRC placement.  However, in his administrative appeal to the Central Office he states "I continue my pursute for nine (9) months of RRC time."  Ex. to Letter dated August 13, 2009, from respondent to the court. [Docket No. 10].  The petition was filed in district court on June 30, 2009, within 10 months of his current projected release date, May 8, 2010, and his currently scheduled halfway house date, November 18, 2009, is within the range currently established for RRC placement.

2

with prejudice on the merits.

**<u>Background and Claims</u>**

Petitioner Calvin Esters is a federal prisoner who is currently incarcerated at FMC–Rochester, Minnesota. He was sentenced on January 22, 2001, to a term of 168 months and five years supervised release, on a conviction in the Southern District of Illinois on drug distribution charges.[6] The sentence was subsequently reduced to 135 months, with five years supervised release, and his current projected good conduct release date is May 8, 2010.[7] A provision of the Second Chance Act allows the BOP to grant an inmate as much as the last 12 months of his sentence in community or home confinement. 18 U.S.C. § 3624(c)(1).[8] Mr. Esters made a request for individual assessment for a release plan pursuant to the SCA, and a review for

---

[6] Pet., ¶¶ 3 and 4, page 2.

[7] Decl. of Anne Kinyon, ¶ 2.

[8] 18 U.S.C. § 3624(c) states in parts pertinent to this action:

> (1) **In general**–The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (6) **Issuance of regulations**–The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection no later than 90 days after the date of enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is–
>
> > (A) conducted in a manner consistent with section 3621(b) of this title;
> >
> > (B) determined on an individual basis; and
> >
> > (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

3

halfway house placement was conducted by his unit team on July 16, 2008.[9] Petitioner was promptly advised that a pre-release placement time of 150-180 days was being recommended, and transfer to a RRC facility in St. Louis, Missouri, has been scheduled to take place on November 18, 2009.[10] The placement time recommendation was made upon consideration of resources available to the petitioner, including family support, specialized job skills, community resources, and a residence. The unit team also considered the nature of the offense and the prisoner's involvement in educational, work, and counseling programming, and his discipline history, as well as the absence of recommendations by the sentencing court in regard to halfway house placement.[11] Petitioner thereafter submitted a written Request for Administrative Remedy to the warden, dated February 2, 2009, and upon denial of the request he submitted a Regional Administrative Remedy Appeal dated March 8, 2009, therein stating that he wanted a 9 to 12 month RRC placement to allow completion of a drug treatment program.[12] The appeal to the regional director was denied by response dated April 14, 2009.[13] Finally, petitioner sought relief

---

[9] Decl. of Anne C. Kinyon, ¶ 3.

[10] Id., ¶ 4 and Attach. B.

[11] Criteria relating to designation of place of imprisonment to be considered under 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c)(6)(A) are: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted or recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the United States Sentencing Commission.

[12] Mem. in Support of Pet'r, Attach. The record in this matter does not include the warden's response, though the Regional Director's response states that such a response was provided by the warden on February 27, 2009.

[13] Mem. in Support of Pet'r, Attach.

from the BOP's Central Office by administrative remedy appeal dated May 9, 2009.[14] This action in district court was commenced on June 30, 2009, prior to issuance of a response from the Central Office. The administrative appeal was ultimately denied by the Central Office in a response dated August 7, 2009.[15]

Petitioner Esters contends that he needs the maximum amount of time in RRC placement to allow his participation in a drug treatment program and to ensure "the greatest likelihood for success."[16] Respondent opposes the petition in this matter, arguing that Mr. Esters has been given the appropriate pre-release consideration under the SCA, and in addition, he must fully complete the BOP's three-part administrative process before seeking relief in federal court.

## DISCUSSION

**Exhaustion**

When grievance procedures exist to provide a means for impartial review, a federal prisoner must exhaust available administrative remedies within the correctional system before seeking extraordinary relief in federal court. Willis v. Ciccone, 506 F.2d 1011, 1015 (8th Cir. 1974). The BOP has established a three-tiered administrative remedy program to address prisoner concerns relating to any aspects of confinement. The first tier of the process requires that an inmate initially seek informal resolution of the grievance and, if there is no informal resolution he must present the complaint to the warden of the facility of confinement. 28 C.F.R. Part 542.13. Thereafter, at the second tier, an unsatisfactory response from the warden may be

---

[14] Ex. to Letter dated August 13, 2009, from respondent to the court. [Docket No. 10].

[15] Id.

[16] Mem. in Support of Pet'r, page 6.

appealed to the BOP Regional Director, and finally, the response of the Regional Director may be appealed to the Central Office of the BOP at the third tier. 28 C.F.R. Part 542.15. A prisoner's complaint has been exhausted, and is thereby subject to district court review, upon receipt of the Central Office response.

Petitioner Calvin Esters expressly acknowledges that he commenced this action prior to receiving a reply to his Central Office appeal, but contends that exhaustion would be futile in light of the relief he is seeking and should be excused under the principal stated in Strong v. Schultz, 599 F.Supp.2d 556, 561 (D. N.J. 2009), wherein the court declined to dismiss the case for failure to exhaust, and upon consideration of the merits the matter was remanded to the BOP with instructions to consider granting the prisoner a longer half-way house placement, in accordance with the Second Chance Act.[17]

The petitioner's reliance upon Strong with respect to exhaustion of administrative remedies is misplaced. In Strong, the district court excused the prisoner from exhausting BOP remedies largely because he had already completed the full three-step Administrative Remedy Program with respect to essentially the same claim that he was entitled to the full 12-month half-way placement under the SCA, and the purposes of exhaustion would not be served by requiring a second round which would likely moot his SCA claim through no fault of his own. See id. at 561. Mr. Esters did not complete one full round of the administrative appeals process before commencing this action in district court. Moreover, to the extent that requiring completion of

---

[17] Strong had been given a six-month half-way house placement and was seeking the maximum 12-month CCC placement, largely because he had been diagnosed with a terminal illness. Id. at 558. The district court specifically advised the BOP to consider designating Mr. Strong to a half-way house for the remainder of his sentence because he had only nine months remaining on the sentence. Id. at 563 n.4.

6

administrative appeals would moot the § 2241 claim for an extended RRC placement, that circumstance is largely a consequence of the petitioner's own delay in initiating the administrative processes after obtaining the unit team recommendation in July 2008.

Nonetheless, the court concludes that the petitioner's failure to exhaust remedies was essentially cured during the pendency of the district court action as a result of the BOP Central Office denial of his appeal, issued on August 7, 2009.[18]  See Leighnor v. Turner, 884 F.2d 385, 388 (8th Cir. 1989).  While the court is hesitant to make a ruling that would allow a parallel district court action to proceed during the pendency of administrative appeals, in this instance the prisoner had performed his part with respect to the 3-tiered appeals process prior to filing this action, and the administrative process in now complete.  Under the particular circumstances in this case, compelling the petitioner to undertake a second round of appeals, therein alleging essentially the same grounds for relief, would be wholly redundant and demonstrably futile, and the court will therefore consider the merits of the petition.

**Merits**

Mr. Esters filed an initial petition in which he succinctly stated that he was challenging the validity of the April 14, 2008, BOP memorandum that had been used to limit his RRC placement time to less than the 12 months permitted under the SCA.[19]  Guidelines relating to application of 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c) in making pre-release custody decisions and halfway house placements are provided in BOP Program Statement 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure, issued on December

---

[18]  Ex. to Letter dated August 13, 2009, from respondent to the court.

[19]  Pet. for Writ of Habeas Corpus 3, ¶ 9 [Docket No. 1].

16, 1998. Section 3624(c) was amended by the SCA to grant the BOP the discretion to refer inmates for RRC[20] placements up to 12 months, thereby requiring modifications to Program Statement 7310.04, which were initially implemented by way of a Memorandum for Chief Executive Officers, dated April 14, 2008.[21] The premise of Mr. Esters' argument in this case is that the duration of his RRC placement recommendation was based upon instructions provided in the April 14, 2008, memorandum, which failed to incorporate the mandate of the SCA to make placement decisions that would provide "the greatest likelihood of success" for re-entry into the community. The offending statement in the April 14, 2008, memorandum is:

> ". . . pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release 'RC placement may require greater that six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.'"[22]

Mr. Esters contends that this language unlawfully establishes a presumptive six-month ceiling on RRC placement. However, petitioner's position is not supported by Eighth Circuit case law. In Miller v. Whitehead, 527 F.3d 752 (8th Cir. 2008), the court considered a RRC placement determination that was based upon pre-SCA regulations, but the decision was rendered subsequent to enactment of the SCA and contains pertinent dicta on the effect of the SCA on half-way house placements. In Miller, the court concluded that the applicable BOP policy statement on early RRC referral, PS 7310.04, did not conflict with 18 U.S.C. § 3621(b) and did not categorically exclude inmates from RRC placements greater that 6 months. The

---

[20] Residential Re-entry Centers (RRCs) were formerly known as Community Corrections Centers (CCCs).

[21] Decl. of Angie Coyle, Ex. A. [Docket No. 7].

[22] Id., ¶ III (D).

8

court further stated:

> "[t]he new BOP guidance issued in light of the Second Chance Act includes an 'adjustment' to PS 7310.04 [*Inmate Requests for Transfer to Residential Reentry Center*, memorandum dated November 14, 2008], which states that 'RRC needs can usually be accommodated by a placement of six months or less,' and that placement in an RRC for more than six months must be approved in writing by a regional director of the BOP. Subject to further elaboration by the BOP or a specific decision by a warden applying this guidance, we do not understand this adjustment to supersede the provision of PS 7310.04 stating that 'placement beyond 180 days [is] highly unusual, and only possible with extraordinary justification.'"

Miller, 527 F.3d at 757 n.4.

As previously noted herein, the Second Chance Act allows the BOP to grant an inmate as much as the last 12 months of his sentence in RRC placement. 18 U.S.C. § 3624(c)(1). Petitioner alleges that the respondent has not complied with the SCA because he is not being granted community confinement for a time of sufficient duration to provide the greatest likelihood of successful reintegration into the community, and that respondent failed to properly consider his individual circumstances–specifically, his desire to participate in a particular drug treatment program. Matters to be considered under 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c)(6)(A) are: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted or recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the United States Sentencing Commission. In a written review for RRC placement under the SCA, Mr. Esters' case manager advised him that the recommendation was based upon his good participation in

educational and a counseling programs, good work performance, and clean discipline history. The evaluation team also considered the nature of the sentenced offense and other relevant criminal history, the absence of any pertinent instructions from the sentencing court, and applicable sentencing guidelines policy.[23]

The exercise of BOP discretion with respect to the 12-month RRC placement as permitted under the SCA was not restricted or precluded under BOP Program Statement 7310.04 in either its pre-SCA form or as modified by language contained in the April 14, 2008, memorandum stating that inmate pre-release RRC needs can usually be accommodated by placement of six months or less and requiring Regional Director approval of an RRC placement greater than six months. In this case, the unit team properly considered Mr. Esters' placement on an individualized basis and having given due consideration to criteria established pursuant to section 3621(b). The unit team determined that 150-180 days halfway house placement was sufficient to satisfy the inmate's RRC needs, and the petitioner has not shown that BOP discretion did not exist or was not properly exercised in arriving at that determination. In particular, Mr. Esters has merely asserted that a certain drug treatment program would be helpful to his community reintegration, but he makes no compelling argument that such treatment, in his preferred program or otherwise, could not be obtained during his currently allotted RRC placement term. Based upon the criteria considered by the unit team, along with the absence of extraordinary or compelling circumstances to justify a longer RRC placement, a maximum halfway house release of 180 days was recommended. Petitioner's argument simply does not

---

[23] Decl. of Anne Kinyon, ¶ 3, Attach. B, <u>Review for Residential Reentry Center, Second Chance Act of 2007</u>.

establish the existence of circumstances warranting relief and does not state grounds upon which to conclude that the BOP failed to address certain criteria or based its determination on RRC placement on improper factors or limits on discretion.  See  Miller v. Whitehead, 527 F.3d 752 (8th Cir. 2008).

## RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, it is hereby **recommended** that Calvin Esters' petition under 28 U.S.C. § 2241 for writ of habeas corpus be **DISMISSED** with prejudice. [Docket No. 1].

Dated:     August 24, 2009

        s/ Arthur J. Boylan
       Arthur J. Boylan
       United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. Written objections shall be filed with the Clerk of Court and served upon opposing parties before September 8, 2009.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.